## Gardner *et ux.* *versus* McLallen.

1. Husband and wife purchased land, to be paid for in part by the wife's money. The deed was made to the husband alone and delivered; shortly after its delivery, the wife objected to it, because not made to them jointly. A new deed to them jointly was executed and delivered, and the first, with consent of all parties, destroyed. *Held*, that the delivery of the first deed did not prevent the parties to it from substituting the second for it.

2. The first deed having been made in mistake, the repudiation of it by the grantee, as soon as the mistake was discovered, would avoid the deed. Per VINCENT, P. J.

3. The second deed was accidentally burned without having been recorded; after the death of the husband one of his children brought ejectment against his widow, for her share as heir. *Held*, that under the Act of April 16th 1869, the widow was not a competent witness as to transactions before her husband's death.

4. Although her interest was co-incident with the husband's in his life, it was adverse to his heirs setting up a claim against her for the land.

5. This point ruled by Karns *v.* Tanner, 16 P. F. Smith 297.

October 21st 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1875, No. 219.

This was an action of ejectment, commenced July 1st 1872, by S. P. Gardner and Olivia, his wife, in her right, against Catharine McLallen, for a tract of land in Washington township. Mrs. Gardner, plaintiff, claimed as one of the heirs of Henry McLallen, deceased, alleging that he died seised of the premises ; the defendant claimed as surviving wife of the deceased, alleging that she and her husband had held the land by the entireties.

It was alleged by the defendant that the land had been purchased with her money, the deed to have been made to herself and husband jointly ; that the deed was by mistake made to the husband alone and acknowledged by the grantor ; that when it was brought to McLallen for delivery, it was objected to by him and the defendant as not being as was intended, and another one was directed to be drawn ; that a deed was drawn and executed to the husband and wife jointly ; it was brought to McLallen's house and delivered, and the other deed handed to the grantor, who immediately burned it in the presence of the justice and all the parties. Neither deed was recorded ; the house of McLallen was afterwards burned and the second deed burned in it.

The case was tried December 18th 1874, before Vincent, P. J.

S. D. Buckley, who had owned the land, testified for plaintiff, that in 1863 he sold the land to McLallen for $1200 ; the deed was executed by witness and wife and acknowledged before Esquire Sherwood ; witness was afterwards requested by Stephen Valentine, Buckley's agent, to make another deed to McLallen and wife ; he did so, two or three weeks afterwards ; he went with

[Gardner v. McLallen.]

Valentine to McLallen's house and found Sherwood there preparing another deed; the second deed was made to Henry McLallen and wife, the defendant, jointly; witness took the first deed and burned it; McLallen gave no directions about the second deed, nor was he present when Valentine requested that a new deed should be made; witness received no consideration for the second deed; witness had no instructions to burn the first deed; McLallen took possession of the land before he died. The whole transaction for the sale of the land was between witness and Valentine, who acted for McLallen.

The wife of Buckley testified substantially as he had done as to the transactions about the second deed.

McLallen left eight children, of whom Mrs. Gardner, the plaintiff, was one.

For the defendant, Sherwood, the magistrate, who prepared the deed and took the acknowledgments, testified that in less than a week after the execution of the first deed he was informed by Valentine that it was unsatisfactory; witness went to see McLallen, who said he wanted the deed made to himself and wife jointly; witness then prepared such a deed; Buckley and wife came whilst he was writing the deed; they signed and acknowledged it; when all the parties were present witness read the deed; handed it to Buckley, told him to hand it to McLallen, which he did. Buckley asked what should be done with the first deed; witness said it should be destroyed; the parties consented to that; Buckley then threw it into the fire in the presence of all the parties.

A witness testified that McLallen told him, soon after the purchase, that he had one deed which was not satisfactory to his wife, and he had another, a joint deed, made to himself and wife, because she had paid for it with her money.

Several other witnesses testified to the same facts.

There was evidence that McLallen could neither read nor write.

The defendant then was offered as a witness. She was objected to by the plaintiffs as being the survivor of two contractors and as the widow of McLallen.

The court, expressing a doubt as to her competency, admitted her to testify.

She testified as to the circumstances of the contract for the land, the execution of the second deed, the destruction of the first; the payment of most of the purchase-money from her funds, &c., much as the other witnesses, but with more particularity.

The following are points of plaintiff's; they were all refused:—

2. The title to the land in question passed entirely out of S. D. Buckley and wife, and became fully vested in Henry McLallen and his heirs at the time of the delivery of the deed to said Henry McLallen, and the burning up or destruction of the said deed some time thereafter did not change or in any way affect the title to the

[Gardner *v.* McLallen.]

same, but left it remaining in Henry McLallen and his heirs; and therefore the plaintiff, as heir at law of said Henry McLallen, is entitled to recover, and their verdict should be for the plaintiff for her interest in the land.

3. The deed from S. D. Buckley and wife to Henry McLallen and wife passed no title to, or interest in the land in dispute to Catherine McLallen, the defendant, the title having previously passed from Buckley and wife to said Henry McLallen by the first or former deed, and therefore their verdict should be for the plaintiff for her interest in the land as heir at law of the said Henry McLallen.

4. The destruction of the first deed, even by the express assent and direction of Henry McLallen, could not divest him of the title or in any way injure or affect the same, but the title remained in him as fully and completely after the deed was destroyed as before, and therefore the plaintiff, as heir at law of said Henry McLallen, is entitled in this suit to recover her interest in the land in dispute.

5. Contracts for the sale of land and transfers of title to real estate under our law must be in writing, signed by the party granting the same, or by his agent duly authorized in writing so to do, and there being no evidence that the said Henry McLallen ever signed or caused to be signed any writing to part with his title to the land in question, after the same became vested in him by the delivery of the deed from Buckley and wife to him, the title to the said land continued in him until his death and then descended to his heirs, and therefore the plaintiff, as heir at law of said Henry McLallen, is entitled to recover, and the verdict of the jury should be for the plaintiff for her interest in the land.

The court charged :—

" It is undisputed that Stephen D. Buckley once owned the land in dispute. In 1862 or 1863, one Stephen H. Valentine made a contract with Buckley to purchase this land, and he also had a contemporaneous contract or arrangement with McLallen to sell the same land to him or to him and his wife. If you believe the evidence for the defence, the defendant was to furnish part of the purchase-money and to have an interest in or security on the land for her money. There is no dispute that she had some money, and if you believe the testimony of Thompson, Henry McLallen admitted that the defendant's money helped pay for the land. If the contract between Valentine and McLallen and his wife was, that she was to have an interest in the land when purchased, a deed made to carry out this contract, not made in pursuance of its terms, would not bind the purchasers of the land unless accepted with a knowledge of the difference between the terms of the deed and the terms of the contract. In the case of a party able to read a deed, the presumption would be that he received it with full knowledge of its

contents, but in a case where the grantee of the deed could neither read nor write, and in the absence of any evidence that the contents of the deed were made known to him, no such presumption could arise, and if as soon as the mistake was found out the grantee repudiated the deed, we think such repudiation would avoid the deed, for to hold otherwise would enable a grantor to practice a fraud upon an ignorant grantee. If then you believe from the evidence' that the original intention of McLallen and his wife was to purchase this land jointly, and have the deed to them so made, and they or either of them ignorantly accepted a deed not in accordance with their intentions in this respect, which was repudiated by them as soon as its contents was known to them, it was no conveyance to them of the land in dispute.

"If the understanding between Valentine and Buckley was, that the deed from Buckley to McLallen was for the purpose of carrying out the arrangement between Valentine and McLallen and wife, and if the deed was not in accordance with that contract, and was accepted by McLallen under the circumstance before referred to, the delivery of that deed to McLallen did not so convey the land to him that it could not be corrected by a new deed in pursuance of the real contract; and after the destruction of the first deed, with the knowledge and consent of all the parties to the contract, we are of the opinion that the second deed conveyed a good title to the grantees in that second deed. But even if McLallen did accept the first deed, with full knowledge of its contents, if the purchase-money was paid in part by the defendant here, under an arrangement on his part that she should have an interest in the land, and afterwards he assented that the deed which did not carry out this arrangement should be destroyed and a new one to himself and wife jointly be made in pursuance of the original understanding, we are of the opinion that the second deed conveyed a good title to the land, and that McLallen was by his acts in connection with the second deed estopped from gainsaying the sufficiency of the last deed, and his children are in no better situation in that respect than he was. * * * If this second deed was made to induce her to use money to pay for the land, and with the assent of all the parties, it was a good consideration to Henry McLallen and sufficient in equity to sustain the new arrangement as against McLallen, and the plaintiff cannot recover. McLallen had a right as against himself to treat the first deed as no conveyance of the title to the land and to surrender the deed for destruction, and, with the assent of all parties, have a new deed made to himself and wife or to his wife alone, if he did not thereby convey to her more than a fair share of his estate.

"As a rule, the execution and delivery of a deed conveys the title of the grantor to the land mentioned in deed, but the grantee in the deed can do acts that will equitably estop him from contesting

[Gardner *v.* McLallen.]

a second deed from the same grantor for the same land, and in deciding this case you are to treat the case just as if this was a contest between Henry McLallen himself and the defendant, so far as legal rights of respective parties are concerned."

The verdict was for the defendant. The plaintiffs took a writ of error; they assigned for error:—

1–4. The refusal of their points.

5, 6. Admitting the defendant to testify.

7. The charge of the court.

*G. A. Allen* (with whom were *Benson & Brainard*), for plaintiffs in error.—The title was vested in McLallen alone by the first deed and could not be divested by its destruction: Wiley *v.* Christ, 4 Watts 176; Botsford *v.* Moorehouse, 4 Conn. 550; Gilchrist *v.* Buckley, 5 Id. 262; 4 Kent's Comm. 452. As to the admission of the defendant as a witness they cited Karns *v.* Tanner, 16 P. F. Smith 297.

*J. C. Marshall* (with who was *F. F. Marshall*), for defendant in error:—A contract for the purchase and sale of land, executed by the delivery of a deed and receipt of bonds for the purchase-money, may be rescinded as to the parties themselves, by a cancellation of the bonds and a re-delivery of the deed to the grantor: Wiley *v.* Christ, 4 Watts 196; Goucher *v.* Martin, 9 Id. 106; Boyce *v.* McCulloch, 3 W. & S. 429; Myers *v.* Myers, 1 Casey 100; Barncord *v.* Kuhn, 12 Id. 383.

Mr. Justice WOODWARD delivered the opinion of the court, November 8th 1875.

The jury were properly instructed that the acceptance by Henry McLallen of the first deed executed by Buckley for the land in controversy, was not, in view of the facts which she alleged, conclusive against the defendant below. It had been agreed that the deed should be made to McLallen and his wife, and it was made to him alone. He accepted it, but there was evidence that he could not read. When Mrs. McLallen discovered that she was not named in it as grantee, she refused to receive it, and declared that she would not advance the purchase-money for the payment of which, as part of the contract, she had stipulated. It was destroyed by the common consent of the parties, and a new deed to the defendant and her husband was prepared and delivered. There was nothing in the relations of the parties, and nothing in the subject-matter of the contract, to stand in the way of the agreement which was made to substitute the second conveyance for the first. Indeed, upon the facts found by the jury, it would have been a fraud upon the plaintiff if the purchase-money had been obtained from her upon the delivery of the first deed to her husband. The instruc-

[Gardner *v.* McLallen.]

tions of the court in the general charge and the answers to the points were entirely unobjectionable.

But the admission of the defendant's testimony was an error that is fatal to this judgment. The very subject of the controversy was the land which had been conveyed jointly to her husband and herself. She was asserting title to it in a suit with her husband's representatives. And her testimony was in relation to circumstances which occurred at the very time when the joint title was acquired. Inseparable as her interest was from that of her husband in his lifetime, it became adverse to that of his heirs when upon his death they set up a claim to the property. An inquiry into the transactions that resulted in the conveyance by Buckley to Mr. and Mrs. McLallen was necessary in order to ascertain the relation to the title which each of the parties bore. To permit the defendant to testify to those transactions was to create the inequality against which Karns *v.* Tanner, 16 P. F. Smith 297, proves it was the object of the proviso to the 1st section of the Act of the 15th of April 1869, to guard. The question here is not distinguishable from that which arose in Karns *v.* Tanner. The death of her husband sealed the defendant's lips, for she became at once, as to the plaintiffs, the surviving party to a transaction out of which the adversary claims involved in this litigation have grown.

Judgment reversed, and *venire facias de novo* awarded.