## Mitchell *versus* Zimmerman.

Where personal property is offered at public sale, and at the time thereof the auctioneer publicly states the conditions of such sale, evidence is admissible in an action between the vendor and vendee to prove that the bid was made and the property struck down to the vendee in pursuance of a prior private agreement which he had made with the vendor, although such agreement be inconsistent with the conditions of the sale as stated by the auctioneer; and, further, that the vendee had taken possession of such property under and by virtue of such private agreement.

March 2d, 1885. Before MERCUR, C. J., GORDON, PAX-

son, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

Error to the Court of Common Pleas of *Berks county:* Of January Term 1884, No. 393.

This was an action of replevin by William Zimmerman against David Mitchell and Agnes Mitchell to recover possession of a horse, which it was alleged the defendants had wrongfully removed from plaintiff's stable.

The facts of the case, with the rulings of the court below, which form the subject of the several assignments of error, are fully recited in the opinion of the Supreme Court.

Verdict for the plaintiff and judgment thereon. Thereupon the defendants took this writ of error.

*J. H. Jacobs*, for plaintiffs in error.

*C. H. Ruhl* (*J. H. Rothermel* with him), for the defendant in error.

Mr. Justice Clark delivered the opinion of the court March 30th, 1885.

The plaintiff in this replevin is a dealer in horses, in the city of Reading; on the 26th of February, 1881, he had a public auction sale of horses at the Drover's Exchange. The terms and conditions of the sale, as they were verbally announced by the auctioneer, in the presence of the bidders, before the sale began, were "sixty days note, with security, or 6 per cent. off for cash, satisfaction to be given before stock is removed." The defendants purchased a horse at this sale, at and for the price of $125. After the sale the horse was removed to the plaintiff's stable, where he remained until in the evening of the same day, when the defendants, without the plaintiff's knowledge, removed him, leaving in its place another horse, which they had previously purchased from the plaintiff. This replevin is brought to recover the possession of the property thus removed.

It is certainly true, if nothing else were shown, or offered to be shown, on the part of the defendants, that they had no right to possess themselves of this property, until satisfaction had been given, according to the terms of the sale, as stated by the auctioneer. They had neither paid the money, nor given note, with security as by the terms they were required, and until this was done the right of property, and of possession, remained with the plaintiff.

But the defendants allege that these terms of sale were under an agreement made beforehand, waived as to them; that their purchase was made under a particular contract, not as to

the price but as to the terms of payment, which extended to them a special privilege over other bidders; and, they claim, that the purchase having been made upon the faith of this contract, the property was rightly removed in pursuance thereof.

As the errors assigned arise from the rejection of certain offers of evidence, the truth of the particular facts therein stated, and offered to be proved, must of course, for the purposes of this case, be assumed.

It is not denied that the price of the horse, which the defendants bought, was to be determined by the bids at the sale ; in this respect the defendants were admittedly on an equality with all other buyers, but the defendants allege that special terms of payment had been particularly agreed upon, and that they had under these terms the right to remove the property at the time it was removed.

To establish this, David Mitchell being on the stand, the defendants proposed to prove in substance : That several weeks before the sale Zimmerman told the witness that if he would trade for a horse which the plaintiff then had, and that horse would not get "all right in his foot" he would in a few weeks have another supply, and he would then have one that would suit, and would exchange. That the parties did trade, the defendants giving $75 difference ; that the defendant took the horse home upon these terms, and kept him until the new supply arrived ; that he then went to the plaintiff's stables and the plaintiff told him he would have a public sale of horses on that day ; that the defendant should bid on a horse that would suit him, and if the price exceeded the price of the other horse which defendant had previously traded for (which horse was to be returned), the defendant was to pay the difference ; if not, it was to be square. To be further followed by evidence that the defendant bid a horse off at $125, took it home, and returned the other horse, and that the plaintiff then had $75 of money from defendant, and $45 which he had received for the first horse traded.

This offer was followed by another substantially as follows : That on the day of the sale of the horse in question, and immediately before it was offered, the defendant asked the plaintiff if he could have the privilege of bidding at the sale, with the understanding that if he should buy a horse higher in price than the defendant had given plaintiff in trade, some three weeks before, for another horse, defendant would pay the difference ; if it would not bring more they would call it even, defendant to take away the horse he might purchase and return the other. That plaintiff replied ; "Yes, that you can do," and with this understanding and agreement defendant

[Mitchell *v.* Zimmerman.]

purchased a horse at the sum of $125, took him home and returned the other horse.

In subsequent offers it was proposed to show by the same witness that, a few days after the sale the plaintiff went to the defendant's house and said to him in the presence of several persons : "Now, Mitchell, you have a good horse, and you ought to be satisfied ; but as the horse you now have cost me more money I ought to have a little more money ; you ought to pay me $25 or $50 to make it even, but give me $25 and we will call it square ; " that Mitchell told the plaintiff, according to the price bidden at the sale for the horse which he now had, and the agreement they had together for his purchase, by the return of the other horse, he did not owe plaintiff anything.

As these several propositions were of testimony to be given by a single witness, they may be considered as constituting a single offer ; the court below, in ruling upon them, and in the opinion filed so considered them.

It is certainly true, as we have said, that under the terms of the auction sale, as verbally announced by the auctioneer, title would not pass to a purchaser until the price was paid or properly secured; the giving of a note with security or actual payment of the price, was made a condition precedent of the sale. Welsh *v.* Bell, 32 Penna. St. 12. But it was altogether proper to admit evidence to show that these verbal conditions were waived, in any particular case, either by an agreement beforehand or by a delivery afterwards. The plaintiff had a right to make any contract he chose respecting payment, there was no writing between the parties, and it was certainly proper to permit the defendant to show what contract, in this particular case, he did make. Prima facie, the defendants' purchase was made subject to the condition, publicly stated, and the burden was clearly upon them to show that this was not so. For this purpose, we think, the evidence offered was admissible. As the action was replevin the real question in the cause was the right of possession, and this depended largely upon what the contract really was and what was done by the parties in pursuance of it. If the facts offered to be proved are true, it is clear that the contract, upon which the defendant's purchase was made, was not according to the general terms or conditions of the sale, but was exceptional in its character and distinct from the ordinary sales then made. The transaction was rather in the nature of an exchange; the defendants to pay the difference between the price of the horse they bought at $125, and the price of another to be returned, out of which the plaintiff had realized $120.

It is contended on part of Zimmerman, however, that assum-

ing the contract to have been as stated, the defendants do not offer to prove the payment of the $5, and that until the other horse was returned, and this difference paid, the right of possession still remained in Zimmerman. Assuming that the case ended here, and that $120 was the price of the horse to be returned, this might be so; but the defendants proposed to show that the other horse having been in fact returned to Zimmerman, they took possession of the purchased horse and removed it to their own stables; that for "a few days" the possession was retained without objection, and that until the bringing of this suit, the defendants' right to remove the horse was not in terms denied, on the contrary, that a few days after the sale Zimmerman went to the defendants' house, and in the presence of several persons, said to him, "Now, Mitchell, you have a good horse, and you ought to be satisfied, but as the horse you now have cost me more money, I ought to have more money; you ought to pay me $25, or $50, to make it even; give me $25 and we will call it square." Under this offer, if admitted and established, the jury might well have inferred that the possession was rightly taken. If Zimmerman had at this time demanded the possession, and denied the defendants' right to remove the horse, until the terms of his purchase had been complied with, had agreed to accept $25 in settlement of his claim, or, indeed, if he had said nothing, a different case would have been presented.

If the conditions of the auction sale, as to the defendants, were dispensed with, we must ascertain the real purpose of the parties in what they said and did. Contracts are executed, or executory merely, absolute, or conditional only, just as the parties may intend; that intention must, in the first instance, of course, be ascertained from the terms of the contract itself; when it is not thus clearly manifested, it may be shown by the circumstances attending its execution, or appear in the conduct of the parties, with reference to it. As the case is to be re-tried we do not desire to discuss the effect of the evidence; when the testimony is taken it may fall far short of the offers made, and any extended discussion of the case, as it is now presented, might have a misleading effect at the trial. We have said enough to indicate the principle upon which we think the evidence is admissible, and that is sufficient.

It is true that the statements contained in the several offers are specifically denied by the plaintiff, but this is of no consequence now; the truth of the matters alleged, on either side, is for the determination of the jury, when the whole case is presented.

We are of opinion that the offers, the rejection of which con-

stitute the several bills of exception in this case, should have been admitted.

The judgment is therefore reversed and a venire facias de novo awarded.