## Herbert Estate.

Argued January 13, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Alfred L. Taxis, Jr.,* for appellant.

*Kirke Bryan,* with him *Wallace M. Keely,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 24, 1947:

Plaintiff, Jonathan B. Hillegass, is seeking to obtain the conveyance to himself of a piece of real estate which he purchased at an auction sale. The court below dismissed the bill in equity which he filed for that purpose.

George D. Herbert, at the time of his death on May 20, 1944, was the owner of a tract of land of somewhat over 19 acres situate in Montgomery County. In his will he appointed Warren J. Herbert and Harry S. Herbert executors of his estate and directed them to sell all his real estate at public or private sale at any time when in their discretion it seemed proper. On October 28, 1944, the executors held a public auction sale of the above mentioned tract, the conditions of the sale being that ten per cent of the purchase money should be paid in cash, and settlement for the premises should be made by the purchaser on April 1, 1945, at which time the deed was to be executed and possession delivered. Plaintiff, with a bid of $6,000, was the highest bidder at the sale and the property was knocked down to him; he paid $600 on account and a memorandum of the purchase was signed by him and the executors. When, however, April 1, 1945, approached, he was informed by the executors, through their attorney, that they had meanwhile received a substantially higher offer for the property, but that, if he was still interested, he might, if he so desired, make another offer of his own. The executors had, on March 26, 1945, entered into an agreement with one Murray H. Gulack to sell him the property for $7,000. As plaintiff made no further offer the executors notified him that they were fixing April 27, 1945, as the date when everyone interested could appear and whoever was the highest bidder could become the purchaser. Plaintiff again failed to respond to this invitation and instead brought the present bill in equity for specific performance of the sale to him at the auction. On May 9, 1945, Gulack entered into a new agreement with the executors changing the price which he had agreed to pay for the property from $7,000 to $7,500.

We are not here concerned with the agreement entered into between Gulack and the executors. Whether the latter should carry out that agreement or should

give to all parties in interest a further chance to make still higher offers, does not call for determination in this proceeding, which relates only to the right of plaintiff to obtain specific performance of *his* agreement. As to that question much testimony was taken in the court below in regard to alleged collusion and stifling of bidding at the auction sale. The executors produced evidence to the effect that Gulack had announced to plaintiff prior to the sale his intention to bid as high as $9,000 for the property but had been dissuaded from so doing because of assurances given him by plaintiff that he would be afforded an opportunity to purchase part of the tract after plaintiff had obtained the property; there was also testimony that another prospective bidder who would have bid up to $6,200 refrained from doing so because of a somewhat similar assurance. The court found that, while there was no fraud, there was at least a misunderstanding on the part of these bidders as a result of which the sale did not bring the price it should have brought, and therefore, having regard for the best interests of the estate, this was in itself a reason why equity should refuse to grant plaintiff specific performance. There was testimony that the land was fairly worth from $7,200 to $9,000, and indeed that plaintiff himself had made decedent an offer of it of $9,000 some time between the years 1930 and 1933, and therefore that plaintiff's bid of $6,000 did not represent the real value of the property. But, while all these considerations may serve as added justification for the court's refusal to grant plaintiff the relief prayed for, the fundamental reason why the action of the court was proper lies in Pennsylvania's long established law governing the sale of real estate by fiduciaries acting under a testamentary power or where approval by the orphans' court is required.

This case arose before the passage of the Act of May 24, 1945, P. L. 944, which, according to its express provision, became effective only upon its enactment. The present controversy, therefore, as is admitted by

all the parties, must be adjudicated under the decisional law as it existed prior to the enactment of that statute. By a continuous line of decisions stemming from *Dundas's Appeal,* 64 Pa. 325, extending through *Orr's Estate,* 283 Pa. 476, 129 A. 565; *McCullough's Estate,* 292 Pa. 177, 140 A. 865; *Clark v. Provident Trust Co. of Philadelphia,* 329 Pa. 421, 198 A. 36, and culminating in *Kane v. Girard Trust Company,* 351 Pa. 191, 40 A. 2d 466 (see also *Brereton Estate,* 355 Pa. 45, 51, 48 A. 2d 868, 870, 871), it was consistently held that, where such a fiduciary had agreed to sell trust property, he not only could, but must, repudiate the agreement at any time before final settlement and conveyance of the title if he received an offer for the property substantially higher than the price for which he had originally contracted to sell it. It was said in *McCullough's Estate,* supra (p. 181, A. p. 866) : "It is not what was or what could have been obtained for the property, but what can be obtained for it that is the determining factor." It was not merely a *power* on the part of the fiduciary but a *duty* to dispose of trust property upon the most advantageous terms which it was possible to secure for the benefit of the estate, irrespective of the fact that a prior agreement which was being superseded might have been entered into by him in the utmost good faith and for what appeared at the time to be a fair and adequate consideration: *Orr's Estate,* supra, pp. 479, 480, A. p. 566; *Clark v. Provident Trust Co. of Philadelphia,* supra, p. 426, A. p. 39. In *Kane v. Girard Trust Co.,* supra, it was held to be mandatory upon the trustees to accept a higher offer for the trust real estate even though made at almost the very last moment when the deed was being conveyed to an earlier purchaser. It was said in that case (p. 197, A. p. 469) : "Our decisions show conclusively that title must pass to the buyer in a matter of this kind before a fiduciary is relieved of the duty to accept a higher bid for trust property. There must be a consummated sale. Until title actually passes the

property is a trust asset, and, so long as it forms part of the corpus of a trust, the trustees must get the highest price obtainable for it. . . . Legal title passes only with the delivery of the deed, and until then the trustee is bound to accept the best offer made for the property." And in *Brereton Estate,* supra, it was pointed out (p. 51, A. p. 871) that this "principle had become a rule of property, a part of the substantive law, applied in all courts and not in the orphans' court alone."

In the present case the legal title had not passed to plaintiff at the time when defendants received the higher bid from Gulack; indeed, it is that title that plaintiff is now seeking to obtain. How does he attempt to overcome the principle pertaining to sales by fiduciaries which was so firmly imbedded in our law? He maintains that at the auction sale Gulack had the same opportunity to bid as plaintiff or anyone else and therefore his higher offer made at a later time should not be recognized. But in the sale of trust property it was not the bidders for whom the law had concern but the interests of the beneficiaries in order to secure for them the highest obtainable return. Plaintiff contends that the doctrine of the cases cited should not apply here because—so he claims—the title which a purchaser gains through having his bid accepted at an auction sale is somehow of a different type and more impregnable than the one which a vendee obtains under a private agreement of sale. There is no basis for such a distinction nor has such a distinction ever been made in the long line of appellate court cases in this Commonwealth. The successful bidder at an auction sale does not obtain a legal title merely by reason of having the property knocked down to him; such a title can result only from the execution and delivery to him of a deed of conveyance; what he does acquire is only the same equitable title which every vendee obtains by virtue of his agreement. "The vendor and vendee, upon the acceptance of the latter's bid at an auction, occupy the same

relation toward each other as exists between the promisor and promisee of an executory contract of sale conventionally made. . . . The general rules with regard to the passing of title in the case of ordinary sales are applicable": 5 Am. Jur. 474, 475, section 41. The rule that the title to property sold does not pass to the purchaser until the price is paid, or a deed or bill of sale executed, or delivery made, applies to auction sales as to all others: *Mitchell v. Zimmerman,* 109 Pa. 183, 186; *Hand v. Matthews,* 208 Pa. 149, 155, 57 A. 351, 354; *Brown v. Reber,* 30 Pa. Superior Ct. 114, 118; *Mervine v. Arndt,* 33 Pa. Superior Ct. 333, 335, 336; *Pennsylvania Company for Insurances on Lives and Granting Annuities, to use, v. Broad Street Hospital,* 354 Pa. 123, 47 A. 2d 281. In this last cited case it was said (p. 128, A. p. 283) : "When the sheriff accepted the bid, the purchaser acquired a right to a deed on complying with the terms of sale and assumed the obligation of complying with those terms: Dickson v. McCartney, 226 Pa. 552, 75 A. 735. The appellant purchaser's position was, in substance, that of a purchaser by articles of agreement; the purchaser had acquired an equitable interest which would become a complete title on complying with the terms of sale: compare Stoever v. Rice, 3 Whart. 21; Slater's Appeal, 28 Pa. 169". In *Stoever v. Rice,* the case thus referred to, it was said (pp. 24, 25) : "we must . . . take a sale by a sheriff, to be attended with the ordinary incidents of a sale by an individual. On payment or tender of the purchase money, the vendee is invested with an equitable title . . . which the law furnishes him with means to complete, by having the legal title added to it." In *Slater's Appeal,* it was said (p. 170) that a purchaser of land at such a sale acquires an *inceptive* interest therein.

Since a purchase at auction sale gives rise merely to an *executory* contract under which the purchaser obtains no greater right or title than does any vendee under a private agreement, it follows that the rule of

*Kane v. Girard Trust Co.,* 351 Pa. 191, 40 A. 2d 466, applies, namely, that until the legal title is conveyed the fiduciary is bound to accept a higher bid, even though no fraud or impropriety was involved in the original sale. Indeed, the rule has actually *been* applied in the case of auction sales: *Hamilton's Estate,* 51 Pa. 58; *Fricke's Estate,* 16 Pa. Superior Ct. 38.

In view of the fact that a substantially higher offer— greater by 25%—than the price bid by plaintiff was received by the executors before the sale to plaintiff was consummated by the delivery of a deed and acceptance of the purchase price, the executors were not only justified, but were in duty bound, having proper regard to the interests of the beneficiaries of decedent's estate, to take cognizance of the later offer, although, as previously stated, we are presently passing only on the right of plaintiff to obtain specific performance of his agreement and not on the rights of Gulack under *his* agreement in case a still higher offer should be received by the executors.

Decree affirmed; costs to be paid by the estate.