**Titus v. Smith**

*John J. Schneider,* for plaintiff.
*Jack G. Linshaw,* for defendant.

WILLIAMS, P. J., August 5, 1972.—The complaint alleges that defendant, as executor of his mother's estate, engaged plaintiff, a real estate broker, to appraise real estate owned by the mother at the time of her decease. After the appraisal was made, defendant orally listed the property for sale with plaintiff at the price of $38,000 with the understanding that defendant would consider any other offer. Plaintiff found a buyer for $32,000. The complaint alleges that defendant was willing to sell at that price but the prospective buyer did not consummate the sale. On July 14, 1971, plaintiff secured a purchaser for $34,000 and obtained a $500 deposit on the purchase price. He notified defendant by letter and a telephone call to defendant's home that he had the $34,000 offer. Defendant on July 18, 1971, agreed to sell the property to a buyer for $34,000 and so advised plaintiff by letter. The deposition of plaintiff shows that his $34,000 offer was subject to the payment to him of a brokerage commission of seven percent. The sale consummated was free of a brokerage commission.

On Sunday, July 18, 1971, when defendant was showing his buyer the property, plaintiff arrived at the property. Plaintiff asserts that he asked defendant to protect his brokerage commission. He avers that defendant agreed to do so. Defendant, in his

deposition, testified that while plaintiff made the request, he does not recall that he agreed to the request.

Plaintiff contends: (1) That he had an open listing to sell the property and that he secured a buyer who was willing and able to pay a price which was the same price for which defendant sold the property to another buyer; and (2) that the promise of defendant to protect his brokerage commission constituted a separate and alternative contract to pay him a brokerage commission.

Defendant moved for summary judgment because: (1) defendant never authorized plaintiff to sell the real estate for less than $38,000, a fact established by the pleadings and deposition; (2) defendant never authorized the sale of the property for $34,000; (3) plaintiff was not entitled to a commission because the sale to his buyer was never consummated.

The record creates three legal issues:

(1) Did plaintiff contract with defendant individually, or, as executor of his mother's estate?

(2) Did plaintiff produce a buyer able and willing to purchase the real estate at a price agreed upon by defendant?

(3) Was the separate and alternative contract having been made on Sunday, July 18, 1971, legally enforceable?

In answering these questions, we will accept as true both the facts pleaded by plaintiff and testimony of plaintiff taken on deposition.

### Did Plaintiff Contract Individually with Defendant or as Executor of his Mother's Estate?

There is a marked distinction between the duty of a fiduciary in choosing between competing offers for the purchase of real estate, and an individual owner.

Unless a fiduciary has signed an agreement to sell (Act of May 24, 1945, P. L. 944, 20 PS §818), it is the duty of a fiduciary to accept the higher offer of purchase: Warfel Estate, 417 Pa. 458 (1965). There, a broker who had a nonexclusive listing for $53,000 secured a purchaser for $42,000, later raised to $43,700. This offer was subject to a five percent brokerage commission. The fiduciary accepted the offer of another purchaser for $42,000, free of a broker's commission. The Supreme Court, in denying the broker's claim for commissions, said at pages 460, 461:

"The Court below properly dismissed appellant's claim. If a real estate agent does not have an exclusive agency to sell a piece of real estate, he is not entitled to a commission 'unless his efforts constituted "the efficient procuring cause of the sale" ': Axilbund v. McAllister, 407 Pa. 46, 56, 180 A. 2d 244; Helmig v. Rockwell Mfg. Co., 380 Pa. 305, 311, 111 A. 2d 118. The 'sale' for which appellant claims a commission is an offer by Dr. Maccoby to purchase the property for $43,700, subject to a broker's commission of $2,185. No sale nor any agreement to sell to appellant's client was ever made by the executor, nor was Dr. Maccoby's purchase offer the highest offer made.

"The duty of a fiduciary to obtain for his or its estate 'the most advantageous price' is a duty owing to the estate and the beneficiaries thereof and not to a broker: Heilig Bros. Co., Inc. v. Kohler, 366 Pa. 72, 76 A. 2d 613; Herbert Estate, 356 Pa. 107, 51 A. 2d 753. Cf. also the Act of May 24, 1945, P. L. 944."

While the complaint charges defendant individually, the complaint, as well as plaintiff's reply to new matter, set up in defendant's answer avers that plaintiff was dealing with defendant in his fiduciary capacity. Paragraph 4 of the complaint alleges:

"That in 1969, the defendant, Arthur Smith *acting as Executor of his mother's estate,* hired the plaintiff to make an appraisal of real estate situate in the vicinity of Child's Park . . . " (Italics supplied.)

In paragraph 26 of plaintiff's reply to new matter, plaintiff alleges that defendant's promise (to protect plaintiff's broker's commissions) " . . . *was a promise by the agent of the estate to answer for the debt of the estate . . .* " (Italics supplied.)

Plaintiff's pleadings show that defendant contracted with plaintiff not as an individual but in his fiduciary capacity as executor of his mother's estate. As shown by the depositions, defendant was one of three beneficiaries of the estate. Under Warfel, it was his duty to accept the best offer for the estate property, which he did. Had defendant accepted the offer made by plaintiff's prospective buyer, such acceptance would have reduced the amount obtained by the estate by seven percent of the sale price. This defendant could not lawfully have done. See Warfel, supra.

### Did Plaintiff Produce a Buyer Able and Willing to Purchase the Property at a Price Agreed Upon by Defendant?

The listing was oral. Plaintiff, in his deposition, stated "At that time I think we were going to shoot for $38,000." This listing was in September 1969. Plaintiff did produce a buyer who agreed to pay $34,000. In his deposition, plaintiff testified as follows:

"Q. Did Mr. Smith ever authorize you to sell this property for $34,000 net?

"A. No.

"Q. Did he ever authorize you to sell this property for $34,000 gross?

"A. No."

Plaintiff's own testimony negates his claim that he obtained a buyer who was willing to pay a price agreed to by defendant.

### Is the Separate and Alternative Contract Void Because It Was Made on Sunday?

It is to be observed, at the outset, that the situation here present is not apposite to the situation present in Andrien v. Bennett, 191 Pa. Superior Ct. 150 (1959). There, a listing contract was agreed upon not on Sunday but on a week day. The sales agreement with the buyer was entered into on Sunday. The Superior Court held that the fact that the sales contract was executed on Sunday did not bar a recovery for real estate commissions, since the broker was not required to prove an enforceable contract but that he produced a buyer able and willing to purchase the property on terms agreed upon by the seller. Here, it is expressly pleaded that the separate contract itself was made on Sunday. The defense that the alternative contract is not enforceable because made on Sunday is not raised in the pleadings. Where the illegality of a contract appears on the face of the complaint, such illegality is cognizable by the court: Howarth et ux. v. Gilman, 164 Pa. Superior Court 454 (1949); Devitt v. Larson Estate, 49 D. & C. 2d 390, 392 (1970).

President Judge Sheely, in Great Lakes Cherry Producers Marketing Cooperative, Inc. et al. v. The C. H. Musselman Company, 3 Adams 95 (1961), said (p. 101):

"The general rule applicable to contracts made in violation of the Sunday Laws is that they are not void, but because they are contra bonos mores, the law will not lend its aid to execute such as are executory, and where such contracts have been executed by the parties, the law leaves them as it finds them:

Chestnut v. Harbaugh, 78 Pa. 473 (1875); Smyers v. McMahon, 71 Pa. Superior Ct. 142 (1919)."

Even if the record is sufficient to establish a separate and alternative contract on the part of defendant to pay plaintiff the commission he claims, such contract, having been made on Sunday, is legally unenforceable.

## Plaintiff's Contentions

Plaintiff argues that a crucial factual issue is raised in the record as to whether there was a separate and alternative contract consummated on Sunday, July 18, 1971. Assuming as a fact that there was such a contract, having admittedly been made on Sunday, it is not legally enforceable.

The argument that defendant ratified the act of plaintiff fails because (1) such ratification is alleged to have taken place on Sunday; (2) plaintiff's deposition shows that defendant never authorized plaintiff to sell for $34,000; and (3) the Supreme Court in Fiegelman v. Parmoff Corp., 435 Pa. 461, 467, held " . . . ratification by a principal of the act of a purported agent in attempting to sell real estate must itself be contained in a writing. [citing cases]."

Finally, plaintiff argues that since count 1 of the complaint claims a right to an appraisal fee of $150, which the answer admits to be due, the court may not enter summary judgment.

The complaint violates Pennsylvania Rule of Civil Procedure 1020(a) in that while a complaint may contain two or more causes of action, each cause of action must be stated in a separate count. Plaintiff's complaint violates this rule because it contains two separate causes of action stated in one count. He has combined in one count his claim for a broker's commission and his claim for an appraisal fee. Since the

answer admits defendant owes the appraisal fee, plaintiff has the simple remedy of moving for entry of judgment for the amount admitted to be due. See Pa. R. C. P. 1037(c). To deny defendant a summary judgment on the issue of brokerage commissions because one cause of action set forth in the complaint is admitted would unnecessarily continue litigation when the record is insufficient in the law to sustain such litigation.

### ORDER

And now, August 5, 1972, defendant's motion for summary judgment is granted as to the claim of plaintiff for real estate broker's commissions in the amount of $2,300, and judgment is hereby entered for defendant as to the claim for brokerage commissions only.