# Federal National Mortgage Association v. Grocers Mutual Insurance Company

*David S. Watson* and *Ronald J. Werhnyak,* for plaintiff.

*Robert C. Jones,* for defendant.

FINKELHOR, *J.,* October 6, 1976—Plaintiff, Federal National Mortgage Association (Federal National), brought the instant action as the named mortgagee to recover the full value ($10,000) of a fire insurance policy, issued by defendant, Grocers Mutual Insurance Company (Grocers Mutual), and insuring premises which were totally destroyed by fire. Defendant denied coverage to plaintiff on the grounds: (1) that plaintiff was legal owner rather than mortgagee when the policy was issued on January 14, 1973, and the policy was void ab initio; and (2) that plaintiff had transferred its interest in the insured property to the Secretary of Housing and Urban Development (HUD) and thereby had no

insurable interest at the date of loss. The case was submitted to the court without a jury on stipulated facts.

The two issues underlying the controversy between the parties and before the court have not been clearly resolved in Pennsylvania law and are as follows:

(1) Whether a named mortgagee under a fire insurance policy has an insurable interest after foreclosure; and

(2) Whether HUD, the grantee, had accepted the deed to the insured property to establish transfer of the title.

A summary of the facts, which are not in controversy, is briefly as follows:

The insured property was located at 601 Chester Avenue, City of Pittsburgh, and was initially mortgaged with the First Investment Company under the HUD-FHA mortgage payment program. By an assignment dated January 20, 1970, the mortgage in the amount of $8,000 was transferred to plaintiff but continued to be serviced by First Investment Company. One Cecilia Frisbee, who is not a party to the instant litigation, acquired the property by deed on or about May 26, 1971. On December 1, 1972, mortgage payments were in default and plaintiff obtained judgment in mortgage foreclosure against the then-owner Frisbee in the amount of $8,594.91, and on January 2, 1973, bid in the premises at a sheriff's sale for $508.38, which represented water and sewage charges and costs of execution.

Following optional procedures, as set forth in the HUD Guide to Mortgagees (section 4110.2), Federal National directed the sheriff to execute his

deed of the property to the Secretary of Housing and Urban Development, and on or about February 22, 1973, the sheriff's deed was delivered to counsel for HUD. However, as the property was occupied by Ms. Frisbee at the time of delivery of the deed, and, therefore, in noncompliance with HUD regulations for the recording of title, the deed to HUD was not recorded in the office of the Allegheny County Recorder of Deeds and as of June 1976, the owner of record remained Cecilia Frisbee.

After the foreclosure,[1] and on or about January 14, 1973, defendant, Grocers Mutual, issued a fire insurance policy on the premises and named plaintiff as mortgagee, and Cecilia Frisbee as the owner-mortgagor. On May 23, 1973, the premises were totally destroyed by fire and, as stated, Grocers Mutual has refused to honor the claim of Federal National.

HUD has refused to accept ownership of the totally damaged property or to reimburse Federal National for the defaulted mortgage without deduction for cost of repair or the insurance proceeds.

The insurance policy issued by defendant contains a standard mortgage clause and specifically provides as follows:

"Loss, if any, under this policy, shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and *this insurance, as to the interest of the mortgagee* (or trustee) only therein, *shall not be*

---

1. The affidavits of Ruby Brooks, Mortgage Officer of First Investment, and Harry Formalt, of Grocers Mutual, state that there is no written record of notice to Grocers Mutual of the mortgage foreclosure.

*invalidated* by any act or neglect of the mortgagor or owner of the within described property, *nor by any foreclosure* or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. . . ." (Plaintiff's Exhibit A; emphasis supplied.)

## DISCUSSION

The crux of the dispute between the parties is whether plaintiff, the named mortgagee under the insurance contract, retained an insurable interest in the premises by the terms of the insurance agreement. In other words, did plaintiff have an expectation of economic benefit from the preservation of the property or an expectation of loss from its destruction to support a claim to the proceeds: VanCure et al. v. Hartford Fire Insurance Co., 435 Pa. 163, 253 A. 2d 663 (1969). If as a result of the foreclosure, plaintiff lost its interest as mortgagee or if title passed after foreclosure to HUD, plaintiff lacked an insurable interest in the premises at the time of the fire under the terms of the policy. Conversely, if the sheriff's sale failed to divest plaintiff's interest in the property, and if the title (ownership) did not pass to HUD, plaintiff retained an insurable interest in the premises.

It is well established under the law of this Commonwealth that title to property passes only after a deed has been delivered and the purchaser at a sheriff's sale acquires no greater rights than a

vendee in a private agreement: Herr v. Bard, 355 Pa. 578, 50 A. 2d 280 (1947). The successful bidder at a foreclosure sale becomes only an equitable owner and delivery of the sheriff's deed is required for legal title to vest after foreclosure: Pa. Co. for Insurances on Lives and Granting Annuities v. Broad Street Hospital, 354 Pa. 123, 47 A. 2d 281 (1946); Herbert Estate, 356 Pa. 107, 51 A. 2d 753 (1947). Thus, after the sheriff's sale, plaintiff-mortgagee acquired an equitable interest pending the delivery of the sheriff's deed.

However, on this issue, the contract of insurance between the parties further provided that the interest of the mortgagee in the insurance proceeds "shall not be invalidated . . . by any foreclosure or other proceedings." Thus, under the clear language of the contract, the insured interest of the named mortgagee continued after foreclosure proceedings—irrespective of the characterization of that interest or the date of issue of the policy. When the language of an agreement is clear, the court will not rewrite the agreement of the parties: 8 P.L.E 169, §143.

In addition, the mortgage clause in the instant policy is a standard clause utilized in many form agreements. Courts in other jurisdictions have interpreted this clause to provide a separate and distinct contract between the insurer and each party to the mortgage so that the rights of the named mortgagee to recover are independent of the mortgagor's interest in the property: Federal National Mortgage Association v. Great American Insurance Company, 300 N.E. 2d 117, 120 (C.A. Ind., 1973). While there are no Pennsylvania cases on this specific point, the right of the mortgagee to recover from the insurer after foreclosure appears

to be the rule in other states and is interpreted by Pennsylvania commentators as the Pennsylvania rule: 19 P.L.E. 338-339, §424; Federal National Mortgage Association v. Great American Insurance Company, supra; Guardian Savings & Loan Association v. Reserve Insurance Co., 2 Ill. App. 3d 77, 276 N.E. 2d 109 (C.A. Ill., 1971); Federal National Mortgage Association v. Ohio Casualty Insurance Co., 46 Mich. App. 587, 208 N.W. 2d 573 (C.A. Mich., 1973).

The second and more critical issue before the court is whether the unrecorded sheriff's deed to HUD extinguished the interests of plaintiff.

It is a fundamental principle of conveyancing that both delivery and acceptance are essential to the validity of a deed: Jackson v. Juvenal, 14 Pa. 519 (1850); Gardner v. McLallen, 79 Pa. 398 (1875). The determination of whether delivery and acceptance have occurred is one of fact. Acceptance of a deed may be by acts, conduct or words of the parties, which show an intent to accept, and include the retention of the deed by the grantee or the assertion of title by him in other proceedings. In these proceedings, the deed was executed by the sheriff to HUD and delivered to counsel for HUD but was never recorded due to failure to comply with the published regulations of the Federal agency.

HUD regulations provide as follows:

"In order to save expense in recording, the deed may be made directly to the Secretary from the mortgagor or other grantor." HUD Handbook 4110.2, ¶12-15.

". . .

"12-12 Occupancy of Property. Unless prior written permission has been obtained from the local

HUD area or insuring office to convey the property occupied, the property must be vacant as of the date the deed to the Secretary is filed for record.": HUD Handbook 4110.2, ¶12-12.

\* \* \*

"The Secretary is not responsible for the property until the deed is filed for record and he is so notified in accordance with the HUD-FHA regulations." HUD Handbook 4110.2, ¶12-15.

Pursuant to these regulations, it would appear that HUD does not take responsibility (i.e., ownership) for property until the prerequisite conditions have been met and the deed recorded. As the insured property was not vacant at the time of the delivery of the deed, the deed was not recorded and HUD refused to accept responsibility.

These regulations of HUD were further confirmed by the deposition of Paul G. Steimer, Director of Housing Management for the Pittsburgh Area Office of HUD, who stated that there was nothing in the HUD records at the Pittsburgh office to indicate the acceptance by HUD of title, absent compliance with regulations.[2]

While acceptance of title is a question of fact, acceptance by HUD imposes upon that body the obligation of payment of the mortgage debt due to the mortgagee, Federal National. Such payment has not been made.

Based upon the above discussion, it is the opinion of the court that the mortgagee-plaintiff retained

---

2. A suit was brought in the name of HUD against Cecilia Frisbee at July term, 1973, no. 2041, but the record fails to indicate that the suit was brought by HUD as titleholder and neither party has argued on the basis of this proceeding.

an interest as mortgagee in the insurance proceeds after foreclosure, based upon the express language of the insurance policy. It is the further conclusion of the court that, pursuant to the HUD regulations, legal title was not accepted by HUD and remained in the prior titleholder of record, Cecilia Frisbee. Therefore, plaintiff's right to recover remains that of a mortgagee (trustee) and not as legal owner.

The parties have stipulated that the actual cash value of the fire damages to the insured premises exceeded the $10,000 policy limit. As of January 14, 1973, when the subject policy was issued, and as of May 23, 1973, when the insured premises were destroyed by fire, the unpaid principal balance to plaintiff under the mortgage was $7,805, with interest at the rate of 8½ percent per year. However, plaintiff's right to interest, as mortgagee, ceased at the time of the foreclosure. Therefore, judgment for plaintiff is calculated in the amount of $8,650.20.

There still remains unresolved in these proceedings the interest of Cecilia Frisbee, the named insured in the policy, and pursuant to the court's analysis, the legal owner of record.

Counsel was directed to contact Cecilia Frisbee and notice of suit was published in the Pittsburgh Legal Journal and the Pittsburgh Press for three successive weeks in May and June of 1976, without success.

As the policy also covered certain furnishings, etc., as well as the building, it is conceivable that Cecilia Frisbee, even after foreclosure, might retain a claim against the insurer. The instant decision shall not constitute a bar against a timely claim by Cecilia Frisbee for the remainder of the policy limits.

An appropriate order is attached hereto.

## NONJURY VERDICT

And now, October 6, 1976, after hearing, the court finds in favor of plaintiff in the above-captioned case against defendant in the amount of $8,650.20.