Clark et al., Appellants, *v.* Provident Trust Company of Philadelphia, Trustee, et al.

Argued December 9, 1937. Before SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*William N. Trinkle,* with him *Frank F. Truscott* and
*J. Paul MacElree,* for appellants.

*J. B. Colahan,* for appellees.

OPINION BY MR. JUSTICE BARNES, March 21, 1938:

This is an action to recover commissions upon the sale
of real estate.   In January, 1929, the Provident Trust
Company of Philadelphia, as trustee under the will of
Jane P. Jacobs, and Dr. Francis B. Jacobs, owned a
tract of ground situated on the southwest corner of High
and Chestnut Streets, in the Borough of West Chester,
known as the "Jacobs Lot," each party having an undi-
vided one-half interest therein.   The property possessed
value as a site for a motion picture theatre.

The plaintiffs, William H. Clark and William M.
Hulme, real estate brokers, engaged in business in West
Chester, had been carrying on negotiations for several
months for the purchase of the property with Benjamin
W. Haines, also a real estate broker of West Chester,
who appeared to act for the owners.   Various offers had
been submitted, none of which was satisfactory, when, on
or about January 27, 1929, Haines advised the plaintiffs
that the owners would accept the sum of $130,000 as
the purchase price for the lot, and would pay Clark and
Hulme a $5,000 commission for procuring a purchaser
at that figure.

The plaintiffs produced responsible buyers for the
property,—Nathan Harrison and Philip Harrison, re-
ferred to as Harrison Brothers, who were willing to
pay the price asked for the property, and on behalf of
whom a written offer to purchase was submitted to the
owners.   Thereafter, at a conference held on February
2, 1929, between the parties, it was agreed that the pur-
chase price should be paid as follows: a payment of

$10,000 in cash upon delivery of the agreement of sale; $40,000 in cash at settlement, and the balance of $80,000 to be secured by a purchase-money mortgage upon the property. At this conference the statement was made on behalf of the owners that "the plaintiffs would be paid a $5,000 commission, but would be paid only when settlement was made."

To prevent any misunderstanding concerning the commission, at the request of the owners, the plaintiffs on February 9, 1929, wrote them a letter which reads in part as follows: ". . . we understand that our commission of $5,000 is to be considered as earned and payable only when settlement is finally completed and the full purchase money received by you."[1]

Shortly thereafter a written agreement of sale in the usual form was received by the plaintiffs. It had been prepared by the owners' attorneys and was in accordance with the terms agreed upon at the conference of February 2, 1929. When the agreement was submitted to Harrison Brothers, they requested that a change be made in its terms so that their liability would be limited to the forfeiture of the $10,000 down payment, as liquidated damages, in the event the settlement was not

---

[1] The full text of the letter is as follows:

"WEST CHESTER, Pa.
"Feb. 9, 1929.

"Dr. Francis B. Jacobs,
"Provident Trust Company of Philadelphia,
"Trustees under the will of Jane B. Jacobs,
"dec'd.
"Gentlemen:

"Supplementing our letter to you of January 29th, 1929, addressed to Provident Trust Company, which contained an offer to purchase premises at the southwest corner of High and Chestnut Streets, West Chester, Pa., we understand that our commission of $5,000 is to be considered as earned and payable only when settlement is finally completed and the full purchase money is received by you.

"Very truly yours,
"CLARK AND HULME."

consummated. This modification was assented to by the owners. In discussing it, defendants' attorney stated to the plaintiff Hulme, "this [the agreement] is nothing but an option; what becomes of your commission if you do not exercise your option? Mr. Hulme replied, 'the whole thing is off.' "

Finally, the agreement as modified was signed by Harrison Brothers and delivered by the plaintiff Hulme to Mr. Haines, representing the owners, on the morning of February 20, 1929. Mr. Haines on the same day presented it to Dr. Jacobs for his signature. Dr. Jacobs declined to execute the agreement or accept the down payment, as, in the interim, a higher offer had been received by Provident Trust Company for the property.[2] No better offer was made thereafter on behalf of Harrison Brothers. On the contrary, they definitely stated that "they were through." Within a few weeks the property was sold to another purchaser for a price of $135,000, subject to a commission of two and one-half per centum, a net increase to the owners of $6,625 over the Harrison Brothers' offer.

The plaintiffs brought this suit to recover the stipulated commission of $5,000, alleging that they had procured a purchaser ready, willing and able to buy the property at the price and upon the terms fixed by the owners. They contend that their right to the commission should not be defeated by the action of the defendants in declining to sell at the agreed price. The defense is that the agreement between the parties provided for the payment of the commission only upon the completion of settlement and the receipt of the purchase price; further, that as one of the owners was a trustee,

[2] During the week of February 18, 1929, various accounts of the pending sale to Harrison Brothers, and the erection of a proposed theatre building, appeared in the "Daily Local News" of West Chester. Evidently these accounts produced another prospective purchaser.

it was bound by law to sell to the purchaser making the best and highest offer for the property.

Dr. Jacobs having died prior to the institution of this suit, the present action was brought against the executors of his estate. The case was tried in the court below without a jury, the parties presenting a "stipulation of facts" followed by requests by both sides for conclusions of law. The court below found in favor of the defendants, and, from the judgment accordingly entered, the plaintiffs have taken this appeal.

It is well settled that a real estate broker's right to a commission accrues as soon as he presents a purchaser ready, willing and able to purchase the property upon the agreed terms: *Keys v. Johnson,* 68 Pa. 42; *Clendenon v. Pancoast,* 75 Pa. 213; *Reed's Exrs. v. Reed,* 82 Pa. 420; *Sweeney v. Oil and Gas Co.,* 130 Pa. 193; *Middleton v. Thompson,* 163 Pa. 112; *Simon v. Myers,* 284 Pa. 3; *Margulis v. Knoell,* 75 Pa. Super. Ct. 228; *Krewson v. Fisher,* 78 Pa. Super. Ct. 509; *Rosenfeld v. Bobb,* 80 Pa. Super. Ct. 280; *Schreibstein v. Cohen,* 89 Pa. Super. Ct. 252. It is equally well established that if it be expressly agreed between the parties that the broker shall not be entitled to any commission until a stipulated condition has been fulfilled, for example, until the purchase price be received by the vendor, then until that condition has been performed the broker has no claim against the vendor for compensation: *Turner v. Baker,* 225 Pa. 359. See also *Bennett v. Crew Levick Co.,* 288 Pa. 180; *Elin v. Mark,* 288 Pa. 186; *Barber v. Miller,* 41 Pa. Super. Ct. 442.

The right of a broker to commissions is a matter of contract. In the present case the rights and obligations of the parties are governed by the letter of February 9, 1929, written by the plaintiffs to defendants for the express purpose of defining the terms of the arrangement respecting the payment of the commission. As the letter provides that the commission was payable only when settlement was completed and the full purchase money

received by defendants, it seems to us that the condition was not satisfied upon which depended the right of the plaintiffs to compensation. The plaintiffs made their bargain and they must abide by its terms. They gave assent in writing to the condition only upon which they were entitled to receive the commission. The modification of the proposed agreement of sale made at the instance of their clients, Harrison Brothers, had their full knowledge and approval. The right to the commission was ended if Harrison Brothers elected not to exercise their right or option to purchase the property.

General rules governing commissions, which ordinarily prevail in real estate transactions, are not applicable to the present case. We have here an express contract between the parties upon that subject, together with their own clear interpretation of its terms.

There still remains a serious difficulty which stands in the way of a recovery by the plaintiffs. A trustee must dispose of trust property upon the most advantageous terms which it is possible for him to secure for the benefit of the estate which he represents: *Orr's Estate*, 283 Pa. 476; *McCullough's Estate*, 292 Pa. 177. In the present case it is conceded that the plaintiffs had full knowledge that the Provident Trust Company of Philadelphia was acting in the capacity of testamentary trustee as to a one-half interest in the property. This is disclosed by plaintiffs' letter of February 9, 1929, which is addressed to "Dr. Francis B. Jacobs, Provident Trust Company of Philadelphia, Trustees under the Will of Jane B. Jacobs, dec'd." An executor or other trustee acts in a representative capacity and persons dealing with him are bound to be cognizant of the extent of his powers: *Moore v. Trainer*, 252 Pa. 367; *Central Trust & Savings Co. v. Walters*, 314 Pa. 418. In negotiations with an executor, trustee or other fiduciary with reference to property owned by an estate, a real estate broker's right to a commission for procuring a purchaser may be defeated by the fiduciary's duty to

reject such purchaser if a better offer be received for the property before title has passed: *Hays's Estate*, 286 Pa. 520; *McCullough's Estate*, supra; *Brittain's Estate*, 28 Pa. Super. Ct. 144.

We think that *Aber v. Penna. Company*, 269 Pa. 384, upon which the plaintiffs rely, is to be distinguished from the present case because there it clearly appears that the real estate broker was unaware he was dealing with a testamentary trustee. The broker was employed by the defendant corporation to sell real estate, not as trustee, but in its individual capacity. It is said in that case (p. 386) : "There was nothing to show defendant's position as trustee until the contract of sale was signed by it as agent for the estate. . . ."

There can be no recovery here against the individual defendant, who has since died, as necessarily his undivided one-half interest was controlled by the trustee status of the other one-half interest. The sale was of the whole property and not of undivided halves thereof. In consequence, for the reasons stated, there can be no recovery against either defendant.

Judgment affirmed.