## Andrien, Appellant, *v.* Bennett.

Argued September 14, 1959. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*William H. Mitman,* with him *Stively and Mitman,* for appellant.

*Robert S. Gawthrop, Jr.,* with him *Gawthrop & Greenwood,* for appellees.

OPINION BY ERVIN, J., November 11, 1959:

This is an action in assumpsit brought by the plaintiff, a licensed real estate broker, for recovery of a

commission from the defendants for the sale of a dwelling property.

The plaintiff was called to the premises of the sellers and an oral agreement of brokerage was entered into on Wednesday, January 18, 1956, whereby the owners instructed the plaintiff that if he could get $10,500.00 for the property, he should go ahead and sell it. A commission of five per cent was to be paid to the plaintiff. The plaintiff immediately undertook to perform his agreement and exhibited the house to several prospects. On Saturday evening, January 21, 1956, the plaintiff was showing the house to prospective purchasers by the name of Albert J. Gaiser and his wife. The owners came to the property at this time and the plaintiff informed them that he had exhibited the property Friday and again that Saturday morning. He stated that he had definite prospects in the house at that time and identified the prospects as the Gaisers, indicating that they were very much interested in the property and that he expected them to buy it. The defendants expressed their approval. Shortly thereafter, that same Saturday evening, January 21, 1956, the Gaisers, who had only recently married and desired the dwelling for a residence, indicated that they would buy the house and instructed the plaintiff to prepare an agreement of sale, indicating that they would sign such an agreement and would give him a check as down payment. The plaintiff made an appointment to meet with the Gaisers the following morning at ten o'clock for the purpose of concluding the transaction. The following morning the Gaisers again appeared, together with the elder Mr. Gaiser, father of the prospective purchaser, and the four visited the house once more, returned to the plaintiff's office and executed an agreement of sale for the property, which agreement was dated the preceding day, Saturday, the 21st, and delivered the check of the senior

Gaiser to the plaintiff in the amount of $100.00 to bind the transaction. This took place at approximately 11:45 in the morning. The plaintiff immediately called the defendants on the telephone and spoke with William C. Bennett, informing him that he had sold the property. Mr. Bennett expressed regret and indicated to the plaintiff that he had just sold the premises himself that morning. The plaintiff offered to bring to the defendant's home the agreement of sale and expressed a desire to discuss the subject but the defendant informed him that he would not sign the agreement and advised the plaintiff that he didn't want to be bothered. Nevertheless, the plaintiff went to the premises of the defendants but was unable to gain entrance. Later in the afternoon he again called the defendant and asked to be permitted to deliver the agreement but again was rebuffed by the defendant, William C. Bennett. Plaintiff then instituted this suit in assumpsit. A board of arbitrators entered an award in favor of the plaintiff and against the defendants in the sum of $548.12. The defendants appealed to the court of common pleas and the matter was tried before a jury, which rendered a verdict in favor of the plaintiff in the sum of $589.25. A new trial was granted on the ground that the trial judge erred in refusing to charge the jury concerning the legal effect of the signing of the contract by the Gaisers on Sunday. The matter was retried before a jury and upon conclusion of the plaintiff's case, the defendants elected to offer no testimony and submitted points for binding instructions. The court directed the jury to bring in a verdict in favor of the defendants on the basis of the second point requested by the defendants that the making of the contract involved a violation of the Sunday Law, Act of April 22, 1794, as amended. The plaintiff appealed from the dismissal of his motions for judgment n.o.v. and new trial.

The Act of 1939, June 24, P. L. 872, §699.4, 18 PS §4699.4, is as follows: "Whoever does or performs any worldly employment or business whatsoever on the Lord's day, commonly called Sunday (works of necessity and charity only excepted), or uses or practices any game, hunting, shooting, sport or diversion whatsoever on the same day not authorized by law, shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of four dollars ($4), for the use of the Commonwealth, or, in default of the payment thereof, shall suffer six (6) days' imprisonment.

"Nothing herein contained shall be construed to prohibit the dressing of victuals in private families, bake-houses, lodging-houses, inns and other houses of entertainment for the use of sojourners, travellers or strangers, or to hinder watermen from landing their passengers, or ferrymen from carrying over the water travellers, or persons removing with their families on the Lord's day, commonly called Sunday, nor to the delivery of milk or the necessaries of life, before nine of the clock in the forenoon, nor after five of the clock in the afternoon of the same day."

When one engages a real estate broker there is ordinarily no bilateral contract of employment. The principal makes an offer which, in the absence of a manifestation of a contrary intent, is interpreted as a promise to pay the broker a commission in consideration of the production by the broker of a customer ready and willing to contract on the principal's terms and able to perform such a contract. Restatement, Agency 2d, §445(c).

"If the principal has given to the broker what purports to be his complete terms and the broker produces a customer ready, able, and willing to enter into the transaction on those terms, the principal cannot

avoid paying the agreed commission by declining to enter into the transaction. . . .

"Irrespective of the completeness of the terms given the broker, if he is to be paid when he finds a customer 'able, ready and willing', he is entitled to his commission if he finds such a customer who enters into an oral agreement with the principal which he is willing to perform at the time fixed for the performance of the transaction, even though the agreement is not binding upon the principal; after the oral contract has been made the principal cannot avoid payment to the broker by refusing to perform it." Restatement, Agency 2d, §445(d).

"*Condition that sale or contract be executed.* Although a promise by a principal is expressed to be conditional upon the execution of an enforceable contract between the principal and the customer, a principal is subject to liability if the broker procures a customer having sufficient assets, ready and willing to enter into an enforceable contract with the principal on the principal's terms, and whose failure to do so is because of the principal's refusal to execute such agreement. Likewise, a promise to pay a commission if the broker 'effects a sale' or 'negotiates a sale' ordinarily subjects the principal to liability not only if a transfer of title is effected but also if an enforceable contract of sale is executed or if a suitable customer is produced who is ready, willing, and able to execute such a contract." Restatement, Agency 2d, §445(e).

In the present case it must be remembered that the defendants did not refuse the contract offered by the plaintiff on the ground of illegality or unenforceability. It is clear from the evidence that the defendants refused to pay the plaintiff's commission because they had sold the property to someone else, which fact was not communicated to the agent until after the agent notified the defendants of the sale he had made to the

Gaisers. This case is ruled by *Rubin v. Kosove,* 171 Pa. Superior Ct. 439, 441, 90 A. 2d 404, where we said: "It is our opinion that to avoid liability for payment of the plaintiff's commission it was obligatory on the defendant, before the plaintiff fulfilled the terms of his agency by procuring a purchaser ready, willing and able to buy, to notify him that the property had been leased and that the defendant would not be able to consummate a sale. As to the necessity of notice to constitute a revocation of an agent's authority to effectuate the terms of his employment, see 12 C.J.S., Brokers, sec. 66, page 152; 8 Am. Jur., Brokers, sec. 46, page 1010."

There was no need for the plaintiff to obtain a ratification of the contract on the next week day: *Campbell v. Wade,* 83 Pa. Superior Ct. 415, 417.

The illegality of the Gaiser contract because of its execution on Sunday was an afterthought of the defendants, probably induced by their counsel. It had not been raised in the pleadings and was first raised in the defendants' points for charge. The plaintiff does not seek the aid of the law to enforce a contract made in violation of the provisions of the Sunday statute. The plaintiff seeks to enforce a brokerage contract. He completely performed that contract when he produced a buyer who was ready, willing and able to enter into a valid and legal contract. If on Sunday, January 22, when defendants were first notified of the Gaiser sale, they had asked their agent to get a contract signed on Monday, January 23, this undoubtedly would have been done. The agent was not permitted to do this because of his principals' refusal to sign any contract. It is the defendants' contention that the agency was terminated by the prior sale made by the owners and that notice of the same to the agent was not necessary. This argument might be answered by saying that the owners' sale was also made on Sun-

day, January 22, and was illegal and therefore incapable of causing a termination of the agency.

The court below relied heavily upon the case of *Smyers v. McMahon*, 71 Pa. Superior Ct. 142. That was an action in trespass for deceit. The Court said, however: "While this action sounds in trespass, the plaintiff's right was founded upon contract." The Court also said: "It was incumbent on the plaintiff in the outset to prove the fraud, the contract, the representations, their falsity, and the extent of the injury resulting therefrom: . . . ."

In the present case it was not necessary for the plaintiff to prove an enforceable contract. All that plaintiff had to do in order to earn his commission under the agency contract was to show that he produced a purchaser who was ready, willing and able to enter into an enforceable contract for the sale of the real estate. While the court below says that the plaintiff, under the pleadings, was obliged to produce an enforceable contract, in order to recover, we have examined the pleadings and evidence with care and cannot agree with this conclusion. While the plaintiff was engaged to sell the premises for certain terms this did not mean that he actually had to make a sale. Obviously he could not make a sale because he did not have title. What was meant was that he was to produce a purchaser who was ready, willing and able to enter into an enforceable contract for the sale of the premises under the terms specified by the sellers. This the plaintiff did and it would work a miscarriage of justice if he were not properly compensated for his services. The owners knew that the agent, whom they sought out to sell their property, was busily engaged in this enterprise. They knew as late as Saturday night that he had a definite prospect in the property and they made no effort to stop him. Later that very evening the prospect said he was ready to sign an

agreement of sale. The agreement was not actually prepared in writing that night because of the lateness of the hour. The work, however, of securing a purchaser who was ready to buy in accordance with the owners' terms had been performed.

The owners cite several cases to show that in the absence of an exclusive right the owners may sell the property without liability to the agent for commissions. This is undoubtedly true. These cases, however, are not in point. The real question in this case is whether notice of the revocation of the agency has to be given to the agent in order to defeat the agent's right to commission, where the owner knows that the agent is working diligently to make a sale.

In view of our position, it is unnecessary to determine whether the sale of a residential property to a newly married couple is a worldly employment or a work of necessity. We quote, however, from an interesting opinion on this subject by Judge BIGGS, now Chief Judge of the Third Circuit Court of Appeals, in *Chadwick v. Stokes*, 162 F. 2d 132, 136, as follows: "But, if we are wrong in the conclusion just expressed, we are of the opinion none the less that the plaintiffs in executing a contract for a home under the circumstances were performing a work of necessity; surely more a work of necessity than running a canal for profit as in Murray v. The Commonwealth, supra, or selling gasoline for Sunday travelers as in Commonwealth v. Minichello, supra, or fixing a railroad switch as in Commonwealth v. Shipley, supra, or manufacturing carbon black as in Natural Gas Products Co. v. Thurman, supra. The Chadwicks had to have a home. It seems odd to us that the rescue of the family relationships of a veteran should be deemed to be of less necessity than the rescue of an ox fallen into a pit; and yet the latter work, on unquestionable authority could not be within the pious prohibitions of

the Pennsylvania statute. We believe that the appellate tribunals of Pennsylvania would reach a conclusion similar to that which we have expressed."

Judgment reversed and new trial granted.