Baumbach et al., Appellants, v. Seip.

444

Argued October 6, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

 

*Daniel Brocki,* with him *John M. Wolford,* and *Dunn, Wolford & Sesler,* for appellants.

*Herbert J. Johnson, Jr.,* and *Peter G. Schaaf,* with them *Evans, Johnson, Scarpitti, Bernard, McCullough & Wittmann,* and *MacDonald, Illig, Jones & Britton,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 18, 1971:

In early 1968 Robert C. Kessler, trustee of the estate of Christian C. Kessler, asked Charles H. Baumbach, a real estate broker, to seek real estate investment opportunities for the trust. Baumbach knew that Norman W. Seip owned income properties which might be available for sale. Baumbach talked with Seip about the possibility of selling some of them. Seip was interested, so Baumbach proceeded to carry on negotiations between Kessler and Seip, keeping their identities unknown to each other until the last stages of the negoiations (Kessler and Seip had never met).

After going back and forth between the parties, Baumbach drafted a contract for the sale of three parcels of land owned by Seip and his wife—the Ridgefield Building and two residential properties, all located in Erie—for a total purchase price of $350,000. Kessler signed the contract, but Seip refused, insisting that the six percent realtor's commission be split with Kessler. Baumbach carried this information back to Kessler, explaining that if Kessler would agree, it would mean a total purchase price of $360,500. Baumbach further showed Kessler how the purchase price could be allocated among the three properties: $176,500 for

the Ridgefield Building; $103,000 and $81,000 for the other two. Kessler agreed to the increased price, representing his share of the commission, and Kessler and the Seips signed the contract. Kessler gave Baumbach a $5,000 handmoney payment.

However, Baumbach's worries were not over. The written contract provided that it was contingent upon Kessler's obtaining Orphans' Court approval for the purchase by the trust. After two hearings on April 30 and July 2, 1968, the Orphans' Court refused to approve the purchase, which had been objected to by income beneficiaries of the trust who alleged that the purchase of the three parcels would require diversion of income to make the mortgage payments.

At the July 2, 1968, hearing, Kessler's attorney told the court that Seip and Kessler were still negotiating concerning the purchase of two of the three properties, one being the Ridgefield Building, to which Kessler's attorney allocated the same price which Baumbach had allocated, to wit, $176,500.

Immediately after the July 2, 1968, hearing, in the hallway outside the courtroom, Baumbach met with the two parties and their lawyers to discuss the possibility of sale for two of the three properties. Subsequently, Baumbach kept in touch with both parties. Kessler told Baumbach that the deal was going along and that the attorneys were trying to get together on a sale. Seip told Baumbach to stay out of the negotiations, that the lawyers were trying to make a deal, and that Baumbach would be taken care of.

On July 17, 1968, the Seips and Kessler signed a contract for the sale of the Ridgefield Building for the purchase price of $171,360. Kessler advised Baumbach of the time and place of the closing, July 31, 1968, at the office of Seip's attorney. When Baumbach arrived at the appointed place on the appointed day, carrying

his prepared settlement sheet showing a commission due of $10,281.60, six percent of the total purchase price, with credit for the $5,000 handmoney payment which he had received from Kessler, he was told that they were holding the closing without him. Baumbach brought suit against Seip and Kessler for commissions, and Kessler counterclaimed for return of the $5,000 handmoney payment. After Baumbach's part of the case was completed, the court entered a compulsory nonsuit against him in favor of all defendants and directed a verdict against him on Kessler's counterclaim. When the court en banc affirmed the trial court's decision, Baumbach appealed.

In *Axilbund v. McAllister*, 407 Pa. 46, 180 A. 2d 244 (1962), we outlined the principles of law which apply in the determination of when a broker is entitled to a commission: "In this area of the law certain principles are well established: (1) a broker cannot recover a commission, even though he brought the seller and buyer together, unless he can prove a contract of employment, express or implied, oral or written, between himself and the buyer (or seller) or an acceptance and ratification of his acts by the buyer (or seller) . . . (2) in the absence of an exclusive agency, if the actions of a broker constitute the efficent cause of the production of a buyer (or seller), he is generally entitled to his commission even though the sale was finally concluded and completed by the seller (or buyer) himself . . . or another broker . . . (3) the mere fact that the broker has carried on *negotiations* with a prospective buyer (or seller) does not entitle the broker to a commission unless his efforts constituted 'the efficient procuring cause of the sale' . . . (4) where the prospective buyer (or seller) and the seller (or buyer) or the broker-agent fail to reach an agreement and there is a *break in their negotiations* . . . and, at a later date, the prop-

erty is sold to (or bought by) the same prospective buyer, the original broker is not entitled to a commission: Sowney v. Bair [269 Pa. 448, 112 Atl. 530 (1921)]." (Emphasis in original.)

There can be no doubt that Baumbach has met the second, third and fourth principles outlined in *Axilbund.* His actions certainly constituted the efficient cause of the sale.

First, Baumbach interested the Kessler trust in buying the property and the Seips in selling it. Then Baumbach carried on the negotiations between the parties which culminated in the written contract for all three properties. Significantly, the portion of the purchase price in that contract allocated to the Ridgefield Building was, minus Baumbach's commission, the final price at which the building was sold. Moreover, there was no break in the negotiations. The record shows that negotiations for the sale of less than the three properties began as soon as the parties walked out of the courtroom.

The court en banc, the trial court, Kessler, and the Seips rely on the first principle enunciated in *Axilbund,* i.e., that a broker cannot recover a commission even though he brought the seller and buyer together, unless he can prove a contract of employment, between himself and the buyer (or seller), or an acceptance and ratification of his acts by the buyer (or seller). Although Baumbach gave evidence that he had authority from Seip to sell one or all three of Seip's properties, and evidence that in selling the Ridgefield property at his (Baumbach's) suggested price, and in telling him he would be taken care of, Seip ratified his acts, all who would deny Baumbach his commission agree that he cannot show any such express or implied authority because of the principle stated in *Yerkes v. Osborne,* 42 Pa. Superior Ct. 253 (1910). In *Yerkes,* a real es-

tate broker was authorized to sell a certain piece of property at $6,500. The broker found a buyer, Alexander, who made an offer of $5,000 for the property, but this offer was flatly refused. All parties then dropped the matter, but sometime later, Alexander, through his lawyer, purchased the improved half of the property for $5,250. At page 255 of *Yerkes,* the Court said: "It would seem to be clear that the plaintiff never effected a sale of the property that was placed in his hands; that he never procured a purchaser to whom the defendant sold the same property after he had begun the negotiations; that he never furnished a party who was ready and able and willing to contract for the property on the terms named; and it was not through any act or default of the defendant owner that he was unable to do what he undertook to do in consideration of the payment of the commission he sues for, to wit, effect a sale of the property on the terms submitted by the owner."

Baumbach's case isn't *Yerkes.* First, that case had a break in the negotiations before the final sale, at which time all parties lost interest, including the broker. Second, in that case there was no evidence that the broker tried to effect a sale for only the improved part of the property or that he had authority to do so. Here, Baumbach drafted a prospectus for each property separately and allocated a separate price to each. Kessler's attorney made clear at the Orphans' Court hearing that the parties were still trying to make a deal for less than three properties at prices suggested by Baumbach. Moreover, Baumbach gave evidence that he had Seip's authority to sell any or all three of the properties and evidence that Seip ratified this arrangement by telling Baumbach that he would be taken care of when the parties finally made a deal.

The court en banc's opinion and the appellee's brief imply that Baumbach's only authority had to come

from the March 6 written contract between the Seips and Kessler. The jury could have found that this was not the case. Admittedly that contract recognized his right to a commission and the parties' relative obligations to pay it. However, even if that contract had made no mention of Baumbach's commission, the jury could have found that an express oral agreement existed under the terms of which Baumbach would have been entitled to the standard six percent commission for any of the three properties which Kessler purchased. Even though the original contract was not approved, the jury could have found that Baumbach was the efficient cause of the sale of the Ridgefield Building and that he had the Seips' authority to sell it. It was error for the court to enter a nonsuit in favor of the Seips.

Baumbach's claim against Kessler stands on a different footing. The only contract involving Kessler was the written contract of March 6, 1968. It was expressly conditioned on approval by the Orphans' Court. Since that condition was not fulfilled, appellants were not entitled to a commission from Kessler under that contract. *Clark v. Prov. Tr. Co.*, 329 Pa. 421, 198 Atl. 36 (1938). There was no evidence of any other contract, oral or written, between the appellants and Kessler. There are no facts in the record upon which an obligation on the part of Kessler to compensate appellants can be inferred.

The judgment in favor of the appellees, Seips, is reversed and a new trial granted.

The judgments in favor of Kessler on the original claim and the counterclaim are affirmed.

Mr. Justice JONES concurs in the result.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision in this case.