409 A.2d 12

**ESTATE OF Lloyd S. BENNETT, Deceased.**

**Appeal of BOB GARVIN AGENCY, INC.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1979.

Decided Dec. 21, 1979.

John J. Petrush, McClain, Petrush, Young & Miller, Beaver Falls, for appellant.

Charles W. Garbett, Ellwood City, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

The will of Lloyd S. Bennett, deceased, was offered for probate before the Register of Wills of Beaver County on May 28, 1975, and letters testamentary issued to the executor named in the will, appellee Equibank, N.A. (Equibank) on June 3, 1975. On May 5, 1977, Equibank filed its first and final account. Appellant, Bob Garvin Agency, Inc. (Garvin), filed a timely objection to the account based on a claim the estate owed it the sum of $12,900.00 commission for procuring a purchaser for certain real property of the estate. Garvin and Equibank presented the case to the Orphans' Court of Beaver County on written stipulations and briefs at an audit hearing on August 9, 1977, and, on January 9, 1978, the court entered an adjudication and decree nisi overruling Garvin's objection and ordering distribution. Garvin filed exceptions to this adjudication which were overruled. From the final decree of the court, this appeal followed.

The relationship between Equibank and Garvin was initiated by a letter dated December 22, 1975, from an Equibank trust officer to Garvin, requesting the agency to list for sale two properties in the Bennett Estate, 596–98 Third Avenue and 538 Third Avenue in Beaver. The letter specifically stated "[w]e cannot for obvious reasons give you an exclusive" and solicited offers "so that we can discuss same with the heirs." Asking prices of $129,000.00 for the 596–98 Third Avenue property and $39,000.00 for the 538 Third Avenue property were set forth, for a total of $168,000.00.

On January 9, 1976, Garvin submitted to Equibank an agreement for the sale of the real estate signed by a potential purchaser, Kathary, offering $142,000.00 for the two properties and a check for $5,000.00 handmoney. The agreement contained two special clauses, which made the agreement contingent upon the ability of Kathary to obtain mortgage financing and to obtain a commitment from the lessee of one of the properties to extend its lease at an increased rent. The mortgage contingency further provided that, should Kathary be unable to obtain financing by a certain date, the agreement would be null and void and the handmoney returned.[1] Equibank informed Garvin by letter the offer was not acceptable to the heirs and suggested if Kathary was interested in making an offer closer to the asking prices, Garvin should forward new agreements to be submitted to the heirs.[2]

On February 2, 1976, Garvin submitted a new offer in which Kathary agreed to meet the asking price of $129,-000.00 for the 596–98 Third Avenue property, but since he

---

1. The text of the special clauses was as follows:

"Subject to Buyer securing a satisfactorily [sic] mortgage commitment by February 15, 1976. If Buyer is unable to obtain mortgage financing to complete his purchase by that date, his handmoney will be returned and this agreement declared null and void.

"Subject to Buyer securing an indication from the Murphy Company that they are willing to extend their present lease term at an increased rate. Buyer knows Murphy Co. officials and is willing to pursue this on his own with a date for removal of this contingency of February 15, 1976."

2. The handmoney check had been returned earlier.

was not predominantly interested in the 538 Third Avenue property, his combined offer for the two properties was $150,000.00. The proffered agreement for the sale of real estate contained special clauses substantially identical to those in the first agreement.[3] Equibank returned the agreement to Garvin explaining the offers had been submitted to the attorney for the heirs, but "at the present time, we are not interested in taking any offers until the market has been explored in the Beaver County area." Subsequently, the 596–98 Third Avenue property was sold to another party for $135,400.00.

Based on these facts, Garvin claims it entered into a contractual relationship with Equibank to sell the two properties, and, because it produced a purchaser ready, willing, and able to contract on Equibank's terms, it is entitled to a commission.

 Unless an exclusive contract is entered with a real estate broker, there is usually no bilateral contract. Rather, the vendor offers a property for sale under certain terms, including a specific price, and the offer is interpreted as a promise to pay the broker a commission for producing a purchaser ready, willing, and able to contract on the vendor's terms and able to perform the contract. *Simon v. H. K. Porter Co.*, 407 Pa. 359, 180 A.2d 227 (1962); *Andrien v. Bennett*, 191 Pa.Super. 150, 155 A.2d 206 (1959). Generally, when a broker produces a purchaser meeting those requirements, the broker is entitled to a commission even if the vendor later sells the property to a different purchaser.[4] *Simon v. H. K. Porter Co.*, supra. However, if a vendor communicates or the circumstances indicate a contrary intention, then the vendor has not made an offer which can

3. The only change in the clauses was a later date, March 15, 1976.

4. Certain cases cited by Garvin involve a different situation in which a broker who was the efficient, procuring cause of a sale seeks to recover a commission and must prove either employment by the vendor or ratification of the broker's acts by the vendor. *E. g.,* *Baumbach v. Seip*, 442 Pa. 443, 275 A.2d 71 (1971); *Lancaster County Farmers National Bank Appeal*, 421 Pa. 448, 219 A.2d 657 (1966).

result in a contractual obligation, if accepted, but an invitation to bid or submit offers. *Hilliard Estate*, 383 Pa. 63, 117 A.2d 728 (1955); *Andrien v. Bennett*, supra.

Instantly, Garvin was contacted by a trust officer of Equibank, which was acting as executor for the Bennett estate and was thus put on notice it was dealing with a fiduciary, *Kane v. Girard Trust Co.*, 351 Pa. 191, 40 A.2d 466 (1945), whose obligation was to obtain the most advantageous price for the estate. *Warfel Estate*, 417 Pa. 458, 209 A.2d 293 (1965); *Herbert Estate*, 356 Pa. 107, 51 A.2d 753 (1947); *Kane v. Girard Trust Co.*, supra. Although no other real estate broker was contacted by Equibank, the terms of Equibank's letter excluded an exclusive contract with Garvin. Thus, Equibank was free to sell the properties privately if that course would be most advantageous to the estate. Furthermore, although the letter specified asking prices for the properties, it solicited offers and explicitly made them subject to approval by the heirs. Moreover, the parties conceded in the written stipulation that Garvin's submissions to Equibank were in fact offers by Kathary.[5]

Had Garvin procured the eventual purchaser of the property, it would be entitled to a commission by the terms of Equibank's original letter.[6] If it had effectuated an agreement for the sale of real estate between Equibank and Kathary, which was later repudiated by Equibank, its interest would be protected by statute; but a mere offer or

5. Even were we to characterize Equibank's letter as an offer, Kathary's submissions would only amount to counter offers because they imposed significant additional terms on the proposed agreement. See *Jenkins Towel Service, Inc. v. Fidelity Phila. Trust Co.*, 400 Pa. 98, 161 A.2d 334 (1960); *Hilliard Estate*, supra; *Pratt Appeal*, 158 Pa.Super. 189, 44 A.2d 608 (1945); *Alexanian v. Fidelity Phila. Trust Co.*, 152 Pa.Super. 23, 30 A.2d 651 (1943). *Schreibstein v. Cohen*, 89 Pa.Super. 252 (1926), is cited by Garvin to establish that the failure to object to the additional terms proposed by Kathary in his first offer constituted an acceptance of the terms by waiver. However, in that case the vendor had orally agreed to the purchaser's counter offer and later tried to extricate himself from the contract and obligation to recompense the broker by challenging the agreement for failure to include certain details.

6. "[W]e are paying to the selling Broker a full commission."

counter offer is insufficient to bring the broker within the terms of the statute. 20 Pa.C.S.A. § 3360.[7] Garvin merely submitted Kathary's offers which Equibank was not obligated to accept and has not presented sufficient facts to establish entitlement to a commission. Therefore, the court below was correct in rejecting Garvin's claim against the estate.

Decree affirmed. Costs on Garvin.

MANDERINO, J., did not participate in the decision of this case.

**7.** Subsection (a) prevents a personal representative empowered to make a contract without court approval, as in the instant case, from evading a contract he has made on the grounds of inadequacy of consideration or receipt of a better offer. When court approval is required and given, the court may not set aside a contract on these grounds. Prior to passage of the predecessor of this subsection, Act of May 24, 1945, P.L. 944, 20 P.S. § 818, a fiduciary was legally bound to accept any higher offer, even though a valid contract entered in good faith existed. *Curtis Estate*, 437 Pa. 123, 128, n.4, 261 A.2d 589, n. 4 (1970).

Subsection (b) pertains to contracts entered into in good faith between personal representatives and brokers which are subsequently set aside by a court whose approval is necessary. In such a case, the broker's right to commission receives some protection. Transmission of an offer or bid does not bring a broker within the statute. See generally, *Betge Estate*, 160 Pa.Super. 233, 50 A.2d 735 (1947); *Pratt Appeal*, supra; *Coyle Estate*, 156 Pa.Super. 185, 39 A.2d 727 (1944). These cases were decided under the predecessor of subsection (b), Act of July 2, 1941, P.L. 227, 20 P.S. § 2254.