457 A.2d 103

**Frank G. BINSWANGER, Jr., John K. Binswanger, Anthony J. Walton, Jr., and Robert M. Brasler, Individually and t/a the Binswanger/Herman Company, Appellants,**

**v.**

**Robert P. LEVY and David Richard Levy, and Burton K. Stein, Esquire and Barclay Hotel Associates.**

Superior Court of Pennsylvania.

Argued May 5, 1982.

Filed Feb. 18, 1983.

42

Jean C. Hemphill, Philadelphia, for appellants.

Sidney Ginsberg, Philadelphia, for appellees.

Before ROWLEY, CIRILLO and MONTEMURO, JJ.

ROWLEY, Judge:

This is an appeal from an order of the trial court sustaining appellees' preliminary objections in the nature of a demurrer and dismissing appellants' complaint in assumpsit.

Initially we note the applicable standard of review is expressed in *Donnelly v. DeBourke*, 280 Pa.Super.Ct. 486, 489–90, 421 A.2d 826, 828 (1980) (citations omitted):

> [W]hen considering preliminary objections in the nature of a demurrer, we accept as true all well-pleaded material facts in the complaint, as well as all inferences reasonably deducible therefrom ... [P]reliminary objections should be sustained and a complaint dismissed only in cases that are clear and free from doubt, i.e., it must appear with certainty, that, upon the facts averred, the law will not permit recovery by the plaintiff.

*See also Bickell v. Stein*, 291 Pa.Super.Ct. 145, 149, 435 A.2d 610, 612 (1981).

A demurrer is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. *Del Boring Tire Service, Inc. v. Barr Mach., Inc.*, 285 Pa.Super.Ct. 66, 426 A.2d 1143 (1981). A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint, and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. *Barto v. Felix*, 250 Pa.Super.Ct. 262, 378 A.2d 927 (1977). In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint. *Linda Coal and Supply Co. v. Tasa Coal Company*, 416

Pa. 97, 204 A.2d 451 (1964). Any doubt as to whether a demurrer should be sustained should be resolved against the moving party. *Commonwealth, Dept. of Environmental Resources v. Peggs Run Coal Co.*, 423 Pa. Commw.Ct. 765, 423 A.2d 765 (1980).

*DeSantis v. Swigart*, 296 Pa.Super. 283, 286, 442 A.2d 770, 771–772 (1982).

■ From the complaint filed in this case the following "facts" appear. The individual appellants are licensed real estate brokers and, as partners, conduct business in Philadelphia under the name "The Binswanger/Herman Company." The three individual appellees are the co-executors of the Estate of Rita K. Levy (decedent). One of the assets of decedent's estate was a "unit"[1] in a "multi-unit building" (the condominium) on Rittenhouse Square in Philadelphia. Decedent's unit was identified as apartment 15–A. Appellee "Barclay Hotel Associates" (the Associates) is a Pennsylvania partnership. The Associates owns or operates the largest single unit in the condominium. The Associates' unit is identified and known as "The Barclay Hotel."

The executors desired to sell Apartment 15–A. On January 25, 1980, Frank G. Binswanger (Binswanger), one of the appellants and a partner in Binswanger/Herman, obtained the approval of the co-executors of the Levy Estate to show the apartment to a prospective purchaser. That same day, Binswanger notified the executors by mail that if his client made an offer to purchase the apartment, he expected "to be paid the normal and usual fee for services rendered."

Binswanger showed the unit to L. Osmond Benoliel, a prospective purchaser, on Monday, January 28, 1980. The next day, appellee Stein informed Binswanger by letter that the broker's expectations would be unfulfilled and his firm would "be entitled to a 6% real estate commission only in the event that the property" was sold to the Benoliels or a

1. See the "Unit Property Act", Act of July 3, 1963, P.L. 196, Art. I, § 102, 68 P.S. § 700–102, repealed by the "Uniform Condominium Act", Act of July 2, 1980, P.L. 286, No. 82, § 2, except as to condominiums created prior to the effective date of the "Uniform Condominium Act".

Dr. Fife, who was also appellants' client. Mr. Stein also stated that Binswanger's firm would "not be entitled to any real estate commission or compensation of any kind from the Estate in the event that the property [was] sold by the Estate to anyone else (including the Barclay Hotel) no matter what the price or terms of said sale may be." He went on to say that the Binswanger firm had "never been nor are you presently authorized to sell, show, appraise, set a value for or in any way deal with" apartment 15–A. Mr. Stein further noted in his letter that the apartment had been previously shown by the executors to certain prospective purchasers and that they would continue in the future to show it to potential buyers. Finally, Mr. Stein said that there was "a further possibility that the hotel unit at the Barclay" [Associates] would "purchase the apartment unit based on an alleged outright option to purchase or under an alleged right of first refusal."

Mr. Benoliel made an offer to purchase the property in February, 1980, for "approximately $187,500." The offer was contained in a letter from the Benoliels' attorney to Mr. Stein but it was alleged that "a copy of the letter has not been made available to" appellants. It was also alleged that the Benoliels' offer "exceeded the purchase price of $180,000 which Mr. Stein had indicated the Estate desired to net from the transaction by $7,500 to cover a commission at a reduced rate which the [appellants], through Frank G. Binswanger, Sr. offered to accept if the sale were concluded."

Prior to receiving the offer from the Benoliels, the executors and Associates had been negotiating for a sale of the apartment but "active negotiations" had ceased when the executors rejected an offer that was "much lower" than that received from the Benoliels. However, "[o]n the basis of the offer made by the Benoliels, the ... Executors received and accepted an identical offer for the Levy Unit from ... [the Associates] which, according to the ... Executors, had a right of first refusal on the Levy Unit and exercised that right after the Benoliels made their offer."

The sale of the apartment to the Associates took place about April 15, 1980.

Appellants further allege that although they have no personal knowledge of the matter, they have been informed that the "Associates either paid the Levy Estate a sum to compensate the [appellants] or else agreed to indemnify the Estate from the [appellants'] claim for a commission." Finally, appellants allege that they are entitled to a commission of $7,500 from "either or both" of the appellees "because it was the services rendered by the [appellants] ... which made it possible for" the executors to sell the apartment to the Associates.

On May 5, 1980, after their demand for payment was refused, appellants commenced this action in assumpsit to recover a commission which they allege was due them. Pursuant to Pa.R.C.P. No. 1017, appellees filed preliminary objections. One objection was in the nature of a demurrer claiming that appellants had failed to set forth facts sufficient to state a cause of action against them. The other objection was in the nature of a motion to strike. On November 18, 1980, the trial court ruled that the complaint failed to state a cause of action; sustained the demurrer and dismissed the complaint.

On December 5, 1980, appellants filed a "motion to open judgment and vacate order sustaining [appellees'] preliminary objections and dismissing [appellants'] complaint." With this motion appellants alleged additional facts, submitted additional exhibits and asked that they "be permitted to proceed to trial, or in the alternative, to amend the complaint." No action was taken on appellants' motion for the ensuing two weeks. Appellants filed an appeal to this court on December 18, 1980 (the last day of the appeal period) from the order of November 18, 1980. Subsequently, on January 23, 1981, the trial court denied appellants' motion to open, vacate or amend for the reason that it was "moot as a result of [appellants'] appeal taken to the Superior Court of Pennsylvania."

We agree with the trial court that, as it now stands, appellants' complaint fails to state a cause of action.

Unless an exclusive contract is entered with a real estate broker, there is usually no bilateral contract. Rather, the vendor offers a property for sale under certain terms, including a specific price, and the offer is interpreted as a promise to pay the broker a commission for producing a purchaser ready, willing, and able to contract on the vendor's terms and able to perform the contract. *Simon v. H.K. Porter Co.*, 407 Pa. 359, 180 A.2d 227 (1962); *Andrien v. Bennett,* 191 Pa.Super. 150, 155 A.2d 206 (1959). Generally, when a broker produces a purchaser meeting those requirements, the broker is entitled to a commission even if the vendor later sells the property to a different purchaser. *Simon v. H.K. Porter Co.,* supra. However, if a vendor communicates or the circumstances indicate a contrary intention, then the vendor has not made an offer which can result in a contractual obligation, if accepted, but an invitation to bid or submit offers. *Hilliard Estate,* 383 Pa. 63, 117 A.2d 728 (1955); *Andrien v. Bennett,* supra.

*Estate of Bennett,* 487 Pa. 157, 161–162, 409 A.2d 12, 14–15 (1979). In this case, the appellants were aware that they were dealing with fiduciaries. Prior to the submission of any offer from the Benoliels, appellants were notified of the very limited circumstances under which a commission would be paid to them. They were also advised that the executors were actively seeking purchasers for the property, and that Associates either had, or claimed to have, an option to purchase the property or a right of first refusal. The letter from Mr. Stein to appellants makes it clear that the executors did no more than invite or agree to receive bids or offers for the property from appellants' clients. The allegations of the complaint repudiate appellants' claim that the executors had made an offer to sell the property or that there was any promise, express or implied, to pay appellants a commission in the event of a sale except on the precise terms stated by Mr. Stein. Therefore, the trial

48

court correctly concluded that the complaint, as drafted, failed to state a cause of action against appellees.

However, we have concluded that appellants should be given an opportunity to amend their complaint in order to set forth a valid cause of action if they can.. First, the procedural anomaly with which appellants were confronted should not operate to foreclose an opportunity which would otherwise be readily available. An order sustaining preliminary objections and dismissing the complaint is a final and appealable order. *Otto v. American Mutual Insurance Company*, 482 Pa. 202, 204 n. 1, 393 A.2d 450, 451 n. 1 (1978) (citing cases). To protect their appellate rights and keep their lawsuit alive, appellants understandably felt constrained to file this appeal. *See Brown v. Kleinfelter*, 267 Pa.Super. 144, 406 A.2d 560 (1979). There is no assertion that the appeal was interposed for delay or to harass the appellees. Furthermore, once the appeal was filed the trial court properly refrained from taking any further action. Pa.R.A.P. 1701. Under these circumstances we are not prepared to hold that appellants have waived the right to amend their complaint.

Moreover, where a plaintiff has asked for leave to amend upon appeal, the Supreme Court of Pennsylvania has granted such leave. In *Otto v. American Mutual Insurance Company*, 241 Pa.Super. 423, 361 A.2d 815 (1976) *reversed* 482 Pa. 202, 393 A.2d 450 (1978), this court denied leave to amend because the appellants in that case had not sought such leave from the trial court in the first instance. 241 Pa.Super. at 436–437, 361 A.2d at 822–823. The Supreme Court reversed saying:

> There may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile. We think, however, that the Superior Court erred in concluding that this was such a case. The right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully. 482 Pa. at 205, 393 A.2d at 450–451.

Likewise, in the instant case we cannot now say, on the present state of the record, that appellants clearly cannot state a cause of action nor can we conclude that granting leave to amend would be futile. *See also Associates of Philipsburg v. Hurwitz,* 292 Pa.Super. 406, 415–416, 437 A.2d 447, 452–453 (1981).

Appellants, in their "Motion to Open Judgment and Vacate Order" filed with the trial court on December 5, 1980 alleged that they had "newly-discovered documents" which support their claim that they are entitled to a commission. These include: (1) the proposed agreement of sale submitted by the Benoliels in the amount of $187,500.00; (2) a letter from the Benoliels' attorney to appellee Stein, dated March 12, 1980; (3) a letter from Mr. Stein dated March 17, 1980 to the Benoliels' attorney which appellants claim "implicitly admits an obligation to [appellants]" and (4) a copy of the deed for Apartment 15–A showing that Associates purchased it on April 14, 1980 for $160,000.00.

In *Hamill Quinlan, Etc. v. Rosswog Homes, Inc.,* 281 Pa.Super. 235, 422 A.2d 146 (1980) this Court held that an allegation by the broker that the seller had agreed with the buyer to pay a realtor's commission, was sufficient to state a cause of action by the broker against the seller and that the trial court had erred in sustaining the seller's demurrer to the broker's complaint. *See also Wray v. Bowman,* 74 Pa.Super. 479 (1920). Although appellants' complaint fails to adequately plead such a promise by any of the appellees in this case it is not clear, in light of the additional averments in their Motion, that they are unable to plead facts that would bring them within this Court's ruling in *Hamill Quinlan, Etc. v. Rosswog Homes, Inc. supra.* It does appear that the stated consideration for the sale to Associates was some $27,500.00 less than the amount offered by appellants' clients. Additionally, in the letter from the Benoliels' attorney to Mr. Stein, the attorney stated that it was his recollection that Mr. Stein had said "that the [Associates] would be required to pay a commission if a demand was made therefore in connection with the sale to the [Associates]."

Appellants also argue that they would be "entitled to a commission if the transaction was not consummated because [the] sellers rejected the buyers produced by [appellants] in bad faith or as a part of a conspiracy between [appellees] to deprive [appellants] of a commission," citing *Perry v. Spellman*, 194 Pa.Super. 555, 168 A.2d 615 (1961). They claim that the information contained in their Motion would support recovery under these theories also.

Whether appellants can in fact plead sufficient facts to state a cause of action under any of these additional theories or whether, if pled, they can prove their right to a commission is not presently before us. We only hold that it does not appear with certainty that the law will not permit recovery by the appellants. This being so, they should be given an opportunity to file an amended complaint before their claim is finally dismissed. We therefore affirm the order of the trial court insofar as it sustained appellees' demurrer to appellants' complaint. However, the order is modified to allow appellants an opportunity to amend their complaint within such time as may be granted by the trial court. Case remanded to the trial court for further proceedings in accordance with this opinion.

Jurisdiction is relinquished.